Gabrielli, J.
This case concerns the duty and obligation of a drawee bank to disburse funds in its customer’s account only in accordance with the latter’s order, and requires us to determine whether a drawee bank is liable to its customer for the delivery of a cashier’s check to a thief in exchange for the customer’s certified check, lacking the payee’s indorsement. More precisely, the question presented may be posed as follows: Is the drawee bank absolved from liability because the cashier’s check is made payable to the same payee as the customer’s certified check for which it was exchanged?
Respondent Fund caused two checks, each in the amount of $100,000, to be drawn on its account at appellant Chase Manhattan Bank (Chase). The checks were made payable to Totowa Savings and Loan (Totowa), a New Jersey bank, and were marked "CD” to indicate that they were drawn for the purpose of purchasing certificates of deposit from Totowa. Respondent Fund’s administrator, Fabio, requested one Naiman to deliver the checks to Totowa and to obtain the certificates of deposit for the Fund. Naiman caused the two checks to be certified by Chase and then proceeded to Totowa where he met with Totowa’s president. He informed the president that he wished to open two certificate of deposit accounts, each for $100,000, one in the name of the Fund and the other *669 in the name of Playmate Enterprise Products, Inc. (Playmate), which Naiman represented to be a subsidiary of the Fund. Upon the advice of a subordinate, Totowa’s president refused to use the Fund’s check to open an account in the name of Playmate but informed Naiman that if he were able to obtain a cashier’s check from Chase, payable to Totowa, a Playmate account could be opened. Naiman then proceeded to Chase and requested an officer of Chase to issue a cashier’s check for $100,000 payable to Totowa in place of the Fund’s certified check for the same sum. In compliance with this request, Chase accepted the Fund’s check without the indorsement of Totowa, the named payee, charged the Fund’s account for the amount of the check, issuing its own cashier’s check payable to Totowa, and gave it to Naiman.
Naiman returned to Totowa and utilized the cashier’s check to open a $100,000 account in the name of Playmate.* Loans were made to Playmate against this account and Playmate ultimately defaulted on them. The funds in the account were applied by Totowa as a setoff against the outstanding balance of the loans and the Fund never recovered the proceeds of its check, eventually discovering that only one certificate of deposit had been issued to it.
The Fund commenced this action against both Chase and Totowa; and Chase, in turn, cross-claimed against Totowa. Special Term, upon severing the Fund’s claims against Chase from the other claims, counterclaims and cross claims in the suit, granted the Fund’s motion for summary judgment against Chase and denied Chase’s motion for summary judgment or, in the alternative, for judgment over against Totowa. By a divided court, the Appellate Division affirmed. It should be emphasized that on this appeal we deal only with the liability of Chase as drawee bank to its customer, the Fund. Hence, in the posture in which the case comes to this court, the question of Totowa’s possible liability to either Chase or the Fund is not now presented for our resolution.
We hold that Chase breached the duty owed to its customer, the Fund, in issuing the cashier’s check since the original certified check, lacking the necessary indorsement of the payee, was not "properly payable” and thus the Fund’s account could not be charged for the amount of the check *670 (Uniform Commercial Code, § 4-401; 5A NY Jur, Banks & Trust Companies, § 380, pp 129-130). The drawee bank stands in a debtor-creditor relationship to its customer and may make payment on checks drawn against its customer’s account only as directed by the latter (Sundail Constr. Co. v Liberty Bank, 277 NY 137, 141-142; Shipman v Bank of State of N. Y., 126 NY 318, 327; Lynch v First Nat. Bank of Jersey City, 107 NY 179, 184; 5B Michie, Banks and Banking, § 277a, p 78). The messenger who procured the exchange was concededly not an agent of the payee, Totowa, nor himself a holder of the certified check and therefore had no right to obtain payment of the check (see Uniform Commercial Code, §§ 3-301, 3-202, 1-201, subd [20]). Chase did not adhere to reasonable commercial practice in issuing the cashier’s check in exchange for the unindorsed certified check for it has long been settled that "[possession of a bill or note unendorsed by the payee is not of itself sufficient evidence of title. It may have been acquired by fraud or theft” (Hathaway v County of Delaware, 185 NY 368, 374; see, also, Bunge Corp. v Manufacturers Hanover Trust Co., 31 NY2d 223, 230, 234 [majority and dissenting opns]; People’s Trust Co. v Smith, 215 NY 488, 493; cf. Uniform Commercial Code, § 3-201, subd [3]). Despite appellant’s protestation to the contrary, this case is analogous to one in which the drawee bank has paid a check over a forged indorsement. A bank making payment on such an indorsement does so at its peril and may not charge its customer’s account for a check so paid unless some basis of estoppel is available to relieve the bank of liability (Shipman v Bank of State of N. Y, supra, p 327; 5B Michie, op. cit. § 276; White & Summers, Uniform Commercial Code, § 17-3, pp 559-560). The same rule should prevail where a bank honors a check payable to order which lacks the indorsement of the payee (cf. Lynch v First Nat. Bank of Jersey City, supra, p 184).
Not seriously disputing the well-established rules articulated above, Chase relies on the principle that a drawer may be precluded from recovering on an improperly paid check where the proceeds of the check actually reached the person intended to receive them (Sundail Constr. Co. v Liberty Bank, supra, p 142; Lynch v First Bank of Jersey City, supra, p 184; Sweeney v National City Bank of Troy, 263 App Div 418, affd 290 NY 624; Gotham-Vladimir Adv. v First Nat. City Bank, 27 AD2d 190, 192-193; 5B Michie, op. cit, § 277a; 5A NY Jur, *671 Banks & Trust Companies, §393). This equitable defense is founded on the concept of unjust enrichment and is based on the view that the drawer should not be permitted to recover from the drawee bank where he has suffered no loss from the improper payment of a check (Sweeney v National City Bank of Troy, supra, p 423 [concurring opn]). Chase thus argues that because the cashier’s check issued in exchange for the certified check was made payable to Totowa, the payee on the original check, the Fund suffered no loss for which Chase may be held responsible. This argument overlooks the nature and function of the cashier’s check issued in the exchange. The cashier’s check, the effective equivalent of the funds which it represented (see Goshen Nat. Bank v State of New York, 141 NY 379, 387; 5A NY Jur, Banks & Trust Companies, § 359), did not indicate its origin and purpose as did the Fund’s check. Thus, while nominally payable to Totowa, the cashier’s check could be utilized for another purpose by its possessor. It could be deposited to any account at Totowa and when so deposited would become the property of the depositor since a debtor-creditor relationship would arise between Totowa and the depositor. This is precisely the scheme employed in this case where the cashier’s check was deposited to the account of Playmate, an instrumentality of the thieves. Totowa, the true payee, never actually received the proceeds of the original certified check for the purpose intended by the drawer. By virtue of the issuance of the cashier’s check, the thieves were able to convert the Fund’s moneys to their own use. Under these circumstances, the reasoning of Hillsley v State Bank of Albany (24 AD2d 28, affd 18 NY2d 952) is applicable to the instant case. In Hillsley (pp 30-31), the court held that a drawee bank, which paid a certified check over a forged indorsement, could not rely upon the defense that the funds eventually reached the rightful payee where the proceeds of the check were not applied by the payee for the purpose intended by the drawer.
Chase also interposes the defense of equitable estoppel contending that the Fund was negligent in entrusting its check to a dishonest messenger. This defense is inapplicable here where the instrument was payable to order and, thus, could not be negotiated without the indorsement of the payee (see Uniform Commercial Code, § 3-202). In cases relied upon by Chase, the instrument entrusted to a dishonest messenger or agent was freely negotiable bearer paper and thus the *672 drawee bank could not be held liable for making payment to one presenting a negotiable instrument in bearer form who may properly be presumed to be a holder (5B Michie, op. tit., §262, p 37; § 277a, p 88; see, e.g., People v Bank of North Amer., 75 NY 547, 565; National Safe Deposit Co. v Hibbs, 229 US 391). The Fund’s check had not been indorsed or properly negotiated to the presenter. The fact that an employee of the Fund, Fabio, entrusted the check to a dishonest messenger does not relieve Chase of liability for the improper exchange, even if the employee himself were implicated in the scheme (see American Sur. Co. v Empire Trust Co., 262 NY 181, 186-187; Gutfreund v East Riv. Nat. Bank, 251 NY 58, 64-65; Shipman v Bank of State of N. Y., 126 NY 318, 331, supra; 5B Michie, op. cit., § 277b, pp 92-93). Chase remained obligated to assure that only the named payee or a holder of the check received payment (5A NY Jur, Banks & Trust Companies, § 376). Its violation of the obligation is especially manifest here where it honored an unindorsed check not properly negotiated to the person presenting it for payment. This is not a case where the drawer has authorized the wrongdoer to draw and issue checks (see Uniform Commercial Code, § 3-405; compare Policy Funding Corp. v Kings County Lafayette Trust Co., 40 AD2d 525, affd 33 NY2d 776); nor does it involve a situation in which the drawer has by its own negligence contributed to the alteration of a check or the making of an unauthorized signature (Uniform Commercial Code, § 3-406). No claim is advanced that the Fund was remiss in examining its monthly statement of account from Chase and could therefore itself have discovered a continuing fraudulent scheme (see Uniform Commercial Code, § 4-406; compare Arrow Bldrs. Supply Corp. v Royal Nat. Bank of N. Y., 21 NY2d 428). Rather, it was the improper exchange by Chase of the Fund’s check for its own cashier’s check which occasioned its customer’s loss. Chase cannot therefore assert that it stands in the position of an innocent party which breached no duty owed to its customer (compare Bunge Corp. v Manufacturers Hanover Trust Co., 31 NY2d 223, 228-231, supra).
Finally, we reiterate that Chase’s cross claim against Totowa is not before us on this appeal because the issues raised on that claim have been reserved by the courts below for resolution at trial. Thus, our decision here does not affect any remedy which may be available to Chase against Totowa based on the latter’s knowledge of the source of the funds *673 credited to the Playmate account or its negligence in permitting respondent’s moneys to be diverted into the hands of thieves (cf. Federal Ins. Co. v Groveland State Bank, 37 NY2d 252).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.

 Naiman, Totowa’s president and others allegedly implicated in the scheme were indicted in New Jersey Federal court. The record before us does not reveal the disposition of these indictments.